■ CHESTER NATIONAL BANK, Respondent, v. RONDOUT MARINE, INC., et al., Appellants.— Appeal from a judgment of the Supreme Court in favor of plaintiff, entered March 13, 1974 in Ulster County, upon a decision of the court at a Trial Term, without a jury. Plaintiff bank commenced this action to foreclose a mortgage in the principal amount of $147,000 given by defendant Rondout Marine, Inc., upon the mortgagor's alleged default in making installment payments. The validity of the mortgage and defendant's failure to make payments after September, 1970 are not disputed. Defendant raised a defense of payment, however, and contended that the installment payments it had paid constituted an overpayment, wherefore it interposed a counterclaim for the alleged excess. The basis for this contention was that, on April 14, 1969, the date of closing, defendant issued to plaintiff a check in the approximate amount of $140,000. Plaintiff's position is that this check was issued as payment for the purchase of certain notes held by plaintiff that had been issued by the Brydon Corporation, a corporation controlled by the same principals who controlled Rondout Marine. The trial court found that the payment to plaintiff of approximately $140,000 was in fact used by Rondout Marine to purchase the Brydon notes, and that defendant was in default. The relief requested by plaintiff was granted, and defendant's counterclaim was dismissed. Defendant's first contention on appeal is that the decision of the trial court was contrary to the weight of the evidence. We disagree. One Carpenter, who was a vice-president of plaintiff at the time of the transactions, testified that De Picabia and Boehm, who were the principal officers of both corporations, wanted to "shore up" Brydon's weak financial situation and therefore were willing to mortgage Rondout Marine property as security for a loan, the proceeds of which would be used to purchase the Brydon notes, and that these notes were purchased by and assigned to Rondout Marine. This testimony was substantiated by the bank's president. There was introduced into evidence a letter, dated April 14, 1969, from Carpenter to Rondout Marine confirming that a check given to the bank in the approximate amount of $140,000 was accepted in payment for the Brydon notes. While the weight to be given such a letter might be affected by its self-serving nature, as the trial court noted, it is pertinent that no objection was ever raised by Rondout Marine to this application of funds prior to its default over 17 months later. Moreover, the loan application recites the purpose of the loan as being "to retire short term notes." There was testimony that Rondout Marine was not indebted to the bank prior to April 14, 1969, and no evidence was offered to the contrary, wherefore it could properly be inferred that the notes referred to were those of Brydon. Plaintiff put in other evidence tending to support its allegations, including ledger sheets dated August, 1969, showing the existence of a mortgage debt owing to plaintiff, while defendant rested without an offer of proof. We agree with the trial court that a mortgagor would hardly be likely, on the day it obtains a mortgage of $147,000, to simultaneously repay $140,000, and then make payments for more than a year greatly exceeding (by approximately $35,000 in this case) the alleged balance of $7,000. The record fully supports the finding and decision of the trial court. Defendant raises two other defenses which are disposed of easily. It is first contended that, under the Statute of Frauds, subdivision 2 of section 5–701 of the General Obligations Law, an agreement, promise or undertaking to answer for the debt of another is void unless a note or memorandum thereof is written and subscribed by the party to be charged. Since there was no such note or memorandum here, it is urged that plaintiff was without authority

to apply the proceeds to satisfy Brydon's debt. However, defendant did not raise this defense in its answer, therefore it must be deemed waived (CPLR 3018, subd. [b]). In any event, the defense would be inapplicable on the facts as presented here. Rondout Marine did not agree, promise or undertake to answer for the debt of Brydon. Rather, by purchasing the notes, defendant took plaintiff's position as obligee. Furthermore, even if it could be said that Rondout Marine had promised to satisfy Brydon's obligations to plaintiff, partial performance rendered the Statute of Frauds inapplicable. Defendant's second affirmative defense is that Rondout Marine's guarantee of Brydon's debt was *ultra vires* under subdivision 7 of section 908 of the Business Corporation Law. That statute provides that a guarantee may be given by a corporation, and such guarantee secured by a mortgage of corporate property, only with the approval of two thirds of the shareholders. Defendant contends there was no proof of the requisite shareholder approval. This section, in our view, is equally inapplicable. Defendant did not give a guarantee. Rather, it undertook an indebtedness as principal debtor, and purchased the obligations of another corporation, thereby becoming the creditor of that other corporation. Judgment affirmed, with costs. Greenblott, J. P., Cooke, Sweeney, Kane and Reynolds, JJ., concur.